IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 04–cv–01971–EWN

DAVID W. KAWATA,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**ORDER AND MEMORANDUM OF DECISION**

This is a social-security benefits appeal under 42 U.S.C. § 405(g) (2004). Plaintiff David W. Kawata challenges the final decision of the Commissioner of Social Security (the "Commissioner"), denying his application for Social Security Disability Insurance (SSDI) benefits. Jurisdiction is based on 42 U.S.C. § 405(g).

**FACTS**

*1.*  *Medical Evidence*

Plaintiff was born on May 13, 1954, and was forty-five years old at the onset of his alleged disability. (Admin R. at 82 [filed Nov. 19, 2004] [hereinafter "Admin. R."].) Plaintiff graduated from high school and has worked in the vocationally relevant past as a supervisor in a meat packing plant. (*Id.* at 77, 194–95.) Plaintiff alleges an inability to work beginning April 27,

2000, due to residual effects of congestive heart failure, lung problems, and back problems. (*Id.* at 82, 100.)

Plaintiff underwent an assessment of his ventricular function in June 1998. (*Id.* at 183.) That test revealed "a left ventricular ejection fraction quantified by MUGA of 47%, and quantified by echocardiogram of 44%, which was stable." (*Id.*) Plaintiff continued to seek treatment at University Hospital Heart Failure Clinic from January 25, 2000 to at least January 2003 for dilated cardiomyopathy. (*Id.* at 164, 207–08.)

In January 2000, Luisa Mestroni, M.D., evaluated Plaintiff and noted that he "has been doing very well on medical therapy over the years." (*Id.* at 183.) She noted that Plaintiff complained of a cough and "[u]nfortunately, we were unable to convince him so far to stop smoking, even though we have discussed several times this issue and we are continuously encouraging [Plaintiff] to start a support therapy for stopping smoking." (*Id.*) Dr. Mestroni noted that Plaintiff had only "mild shortness of breath . . . [which] appears to be worsened by environmental conditions like cold air and seems to be much more related to his chronic obstructive pulmonary disease." (*Id.* at 183.) Dr. Mestroni opined that Plaintiff had at most "class II cardiac symptoms." (*Id.* at 184.)

On June 27, 2000, Plaintiff reported to the Heart Failure Clinic that he had no change in his symptoms and he was able to walk two to three blocks without shortness of breath. (*Id.* at 175.) Joann Linderfeld, M.D., evaluated Plaintiff and noted that Plaintiff frequently got bronchitis and had a regular cough. (*Id.*) On examination, Plaintiff's chest showed diminished breath sounds and there was "marked wheezing with forced expiration." (*Id.*) Dr. Linderfeld diagnosed Plaintiff with cardiomyopathy and noted that Plaintiff had a recent echocardiogram

which showed fairly normal volumes and an ejection fraction estimated at fifty percent. (*Id.* at 176.) Dr. Linderfeld opined that Plaintiff's symptoms were "unchanged" and Plaintiff "appears quite stable." (*Id.*)

In October 2000, Paul G. Hurst, M.D., evaluated Plaintiff at the Heart Failure Clinic. (*Id.* at 173.) Dr. Hurst opined that Plaintiff's cardiomyopathy was "quite stable" and at most Plaintiff "has class II heart failure symptoms consisting of fatigability." (*Id.*) Dr. Hurst noted that Plaintiff's smoking was down to one cigarette every two weeks. (*Id.*) At this time, Plaintiff was working full-time without difficulty. (*Id.*)

On April 17, 2001, Plaintiff presented to Dr. Linderfeld at the Heart Failure Clinic. (*Id.* at 167.) She noted that Plaintiff had "exercise induced hypoxemia." (*Id.* at 168.) Dr. Linderfeld suspected increasing heart failure and as a result, she increased Plaintiff's medicine and cautioned him against doing any significant exertion. (*Id.*) Plaitniff's chest X-ray revealed that his heart size was normal and his lungs were "clear of active processes." (*Id.* at 170.)

Plaintiff visited the Heart Failure Clinic on April 24, 2001. (*Id.* at 164.) Dr. Brian D. Lowes evaluated Plaintiff and noted that Plaintiff was doing quite well and was still working full-time. (*Id.*) Dr. Lowes noted that "[Plaintiff's] heat failure seems to be improved on increased doses of diuretics." (*Id.*) Dr. Lowes opined that Plaintiff demonstrated a possible holosystolic murmur. (*Id.* at 182.)

On June 26, 2001, Michael R. Bristow, M.D., evaluated Plaintiff at the Heart Failure Clinic. (*Id.* at 156–57.) Dr. Bristow noted that Plaintiff had evidence of bronchospasm and as a result Dr. Bristow stopped one of Plaintiff's medications. (*Id.* at 156.) Dr. Bristow concluded that Plaintiff's cardiac function was stable and "he [was] not in overt heart failure." (*Id.*) Dr.

Bristow concluded that "[f]rom a cardiac standpoint, . . . he is at the most class 2, with the dyspneic symptoms being probably a mixture of pulmonary and cardiac." (*Id.*)

In August 2001, Plaintiff presented to Eugene E. Wolfel, M.D. (*Id.* at 154.) Dr. Wolfel noted that Plaintiff "has been doing reasonably well except for increased cough and shortness of breath." (*Id.* at 153.) Dr. Wolfel noted that Plaintiff did not have any "fluid retention, . . . chest pain, . . . palpitations, [and] no change in his energy level." (*Id.*) At this visit, Plaintiff reported some decrease in his cough and mild improvement in his shortness of breath. (*Id.*)

In January 2002, Dr. Lowes evaluated Plaintiff in a routine follow-up. (*Id.* at 147.) Dr. Lowes noted that Plaintiff was doing "reasonably well," but he "continues to be dyspneic with a mild to moderate level of exertion." (*Id.*) Plaintiff had an exercise test during this visit that was halted due to shortness of breath. (*Id.* at 152.) Dr. Lowes opined that Plaintiff was stable from a cardiac standpoint, but "[h]e does have a severe impairment in his functional capacity and, unfortunately, I think it will be difficult for him to return to a competitive work environment so based on his exercise test." (*Id.* at 148.)

On July 13, 2002, Gregory Denzel, D.O., evaluated Plaintiff. (*Id.* at 195.) Plaintiff drove himself to this particular doctor's visit. (*Id.*) Plaintiff reported to Dr. Denzel that he did not have any pain and his primary problem was dyspnea on exertion. (*Id.*) Plaintiff reported that he (1) wakes up at 5:00 a.m., (2) eats three meals a day, (3) baths and dresses himself, and (4) does his own chores, errands, shopping and cooking. (*Id.*) Plaintiff noted that he does all of these activities "very slowly" and he avoids any heavy lifting or prolonged standing, walking, or repetitive activities. (*Id.*) An X-ray revealed significant cardiomegaly but was otherwise normal. (*Id.* at 197.) Plaintiff presented "somewhat short of breath upon simple maneuvers in the

examination room." (*Id.*) Dr. Denzel opined that Plaintiff was "unable to tolerate any type of vigorous activity and therefore restricted Plaintiff to lifting no more than ten pounds and pushing or pulling no more than twenty pounds. (*Id.*) Further, Dr. Denzel restricted Plaintiff from "bending, stopping, squatting, climbing, and crawling or prolonged standing or walking for more than [ten] to [fifteen] minutes at a time without frequent change of position." (*Id.*)

In January 2003, Dr. Wolfel evaluated Plaintiff for a follow-up visit regarding his heart condition. (*Id.* at 207–08.) Dr. Wolfel noted that Plaintiff was overweight and had gained thirty-five pounds since June 2000. (*Id.* at 207.) Plaintiff's EKG at this visit showed "normal sinus rhythm." (*Id.* at 208.) Dr. Wolfel noted that Plaintiff had worsening shortness of breath. (*Id.*) Dr. Wolfel opined that "[b]ecause of the improvement in his cardiac function and the lack of findings of decompensated heart failure . . . his exercise intolerance may be related to his pulmonary disease." (*Id.*)

2.  *Procedural History*

Plaintiff applied for disability insurance benefits on April 25, 2002. (*Id.* at 82–84.) The Social Security Administration denied his application on June 30, 2002. (*Id.* at 68–71.) The Administrative Law Judge ("ALJ") held a hearing on Plaintiff's claim on May 12, 2003, at which Plaintiff and a vocational expert testified. (*Id.* at 219–60.)

Plaintiff testified regarding his past work as a shipping supervisor. (*Id.* at 221–25.) Plaintiff testified that he could not work because he had difficulty breathing and he had back problems, all of which limited his ability to lift, walk, stand, and perform his past duties at work. (*Id.* at 226, 237.) Plaintiff testified that as a shipping supervisor, he sat in his office the majority

of the time and did not experience many problems with his back. (*Id.* at 226.) He acknowledged that if his back bothered him he could stand and stretch as needed and that would "ease the pain." (*Id.* at 227.) Plaintiff explained that he uses an inhaler to help with his breathing. (*Id.* at 228.) Plaintiff further testified that toward the end of his employment, he began to do a poor job due to his difficulties with breathing, standing, and walking. (*Id.* at 242–44.) He was laid off due to economic reasons. (*Id.* at 223–24.)

Plaintiff testified that he sought most of his medical treatment through University Hospital and that he went there once per year since he stopped working. (*Id.* at 234.) Plaintiff testified that during the day he performed household chores such as washing dishes, cooking, mowing part of the lawn, shopping for groceries, and shoveling snow with a push shovel during the winter. (*Id.* at 236, 239–41.) Plaintiff said that he has trouble lifting, including lifting a heavy shovel full of snow and throwing it very far. (*Id.* at 239–41.) Plaintiff testified that he could not mow his lawn without taking breaks. (*Id.* at 241.)

Plaintiff testified that in an eight-hour day he would probably be able to stand one to two hours. (*Id.* at 248.) He testified that he was not able to stand without leaning against something. (*Id.*) Plaintiff testified that he could only walk one block without having to take a rest and it would take him about four to five minutes to walk the block. (*Id.*) Plaintiff testified that he could lift thirty pounds at a time, he could lift ten pounds for one-third of the workday, and five pounds for two-thirds of the workday. (*Id.* at 249.) Plaintiff testified that he had trouble breathing every day. (*Id.* at 250.)

James Hardaway, a vocational expert, testified at the hearing. (*Id.* at 252–60.) Hardaway described Plaintiff's past work as a shipping supervisor as a skilled position requiring light

-6-

exertion as generally performed in the national economy, but requiring heavy exertion, at times, as Plaintiff described. (*Id.* at 252–53.) Hardaway testified that an individual, similarly situated to Plaintiff, could perform unskilled, sedentary work as a food and beverage order clerk, a charge account clerk, and a paramutual ticket checker. (*Id.* at 254–55.) Hardaway opined that such jobs existed in the regional or national economy. (*Id.*) Haradway further testified that an individual such as Plaintiff could perform light work as a factory assembler and traffic checker. (*Id.* at 254–55.) He testified that Plaintiff could perform these jobs if he was limited to lifting and carrying only ten pounds occasionally. (*Id.* at 258.)

The ALJ issued a decision after a hearing on January 22, 2004. (*Id.* at 55–64.) The ALJ determined Plaintiff was not disabled because he retained the residual functional capacity ("RFC") to perform the full range of sedentary work. (*Id.* at 62.) The ALJ added that such work exists in significant numbers in the national economy. (*Id.* at 32.)

In reaching his conclusion, the ALJ first found that Plaintiff had not engaged in substantial gainful activity since April 17, 2001. (*Id.* at 55.) Next, the ALJ determined that Plaintiff has cardiomyopathy, chronic pulmonary insufficiency, obesity, and hypertension which are all medically determinable severe impairments. (*Id.* at 56.) While these impairment are "severe", the ALJ determined that "[Plaintiff's] daily activities do not reflect Listing-level functional impairment." (*Id.* at 59.) The ALJ noted that "[t]he combination of the [Plaintiff's] impairments results in significant functional limitations, but not of Listing-level severity." (*Id.*) Next, the ALJ determined Plaintiff's RFC. In determining Plaintiff's RFC, the ALJ found that Plaintiff was not credible because Plaintiff

>   testified that he washes dishes, cooks, goes grocery shopping, drives, does yard
>   work, mows the lawn, but he cannot mow the lawn all at once. He has difficulty
>   shoveling snow. He does not exercise. At his July 2002 consultative evaluation
>   [Plaintiff] reported that he bathed and dressed, did household chores, ran errands,
>   shopped, and cooked. He did all activities very slowly and avoided heavy lifting,
>   prolonged standing, walking, or repetitive activities. . . Although [Plaintiff's] daily
>   activities are limited by his impariments, the activities that he performs show the
>   ability to engage in at least sedentary work. Furthermore, [Plaintiff's] daily
>   activities reflect a much higher level of functioning that [sic] his testimony
>   regarding his ability to stand, walk, and lift.

(*Id.* at 62.) Based on the evidence presented to him, the ALJ issued his RFC determination. The

ALJ concluded that:

>   [Plaintiff] has the [RFC] to perform the full range of sedentary work, with brief,
>   five to [ten] second stretch breaks. [Plaintiff] is able to stand or walk for [fifteen]
>   to [thirty] minute intervals for one to two hours in an eight hour day with change
>   of position. He is able to lift or carry [fifteen] pounds occasionally and [ten]
>   pounds frequently. [Plaintiff] can occasionally stoop, crouch, kneel, and climb
>   stairs, but cannot climb or crawl. He must avoid working in strong concentrations
>   of chemicals or dust. [Plaintiff] is restricted to working infrequently [sic] high
>   humidity or extremes of hot and cold, but short periods of exposure to these
>   conditions are allowed.

(*Id.* at 62.) In accord with this RFC, the ALJ determined that Plaintiff could not perform his

past relevant work. (*Id.*) The ALJ determined that there are a significant number of jobs in the

regional and national economy which Plaintiff could still perform, and therefore the ALJ found

that Plaintiff was not disabled. (*Id.* at 63.) Plaintiff appealed this decision, and on July 28, 2004,

the appeals council declined to review the ALJ's determination. (*Id.* at 6–9.) Thus, the ALJ's

decision became the Commissioner's final decision for the purposes of the present appeal.

Plaintiff filed a complaint in this court on September 23, 2004, challenging the Commissioner's

denial of disability insurance benefits. (Compl. [filed Sept. 23, 2004] [hereinafter "Compl."].)

## ANALYSIS

### *1. Standard of Review*

Section 405(g) of the Social Security Act establishes the scope of this court's review of the Commissioner's denial of disability insurance benefits. *See* 42 U.S.C. § 1383(c)(3) (2004) (incorporating review provisions of 42 U.S.C. § 405[g]). Section 405(g) provides, in relevant part, that

> [t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied by the Commissioner of Social Security or a decision is rendered under subsection (b) of this section which is adverse to an individual who was a party to the hearing before the Commissioner of Social Security, because of failure of the claimant or such individual to submit proof in conformity with any regulation prescribed under subsection (a) of this section, the court shall review only the question of conformity with such regulations and the validity of such regulations.

42 U.S.C.A. § 405(g). Thus, this court's review is limited to determining whether the record as a whole contains substantial evidence supporting the Commissioner's decision. *See id.*; *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992). The court must uphold the Commissioner's decision if it is supported by substantial evidence. *See Dollar v. Bowen*, 821 F.2d 530, 532 (10th Cir. 1987). This court cannot re-weigh the evidence nor substitute its judgment for that of the ALJ. *Jordan v. Heckler*, 835 F.2d 1314, 1316 (10th Cir. 1987). That does not mean, however, that my review is merely cursory. To find that the ALJ's decision is supported by substantial evidence, the record must include sufficient relevant

evidence that a reasonable person might deem adequate to support the ultimate conclusion. *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). The ALJ's decision is also subject to reversal for application of the wrong legal standard. *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988); *Frey*, 816 F.2d at 512.

### 3. *Evaluation of Disability*

The qualifications for disability insurance benefits under the Social Security Act are that the claimant meets the insured status requirements, is less than sixty-five years of age, and is under a "disability." *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991). The Social Security Act defines a disability as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2004). In proving his disability, a plaintiff must make a *prima facie* showing that he is unable to return to prior work he has performed. *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988). Once the claimant meets that burden, the Commissioner must show that the claimant can do other work activities and that the national economy provides a significant number of jobs which the claimant could perform. *Frey,* 816 F.2d at 512.

The Commissioner has established a five-step process to determine whether a claimant qualifies for disability-insurance benefits. *See Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987)

(describing five-step analysis); 20 C.F.R. § 404.1520 (2004). A claimant may be declared disabled or not disabled at any step; and, upon such a determination, the subsequent steps may be disregarded. *See Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988); 20 C.F.R. § 404.1520(a). First, the claimant must demonstrate that he is not currently involved in any substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must show a medically severe impairment (or combination of impairments) which limits his physical or mental ability to do basic work activities. *Id.* § 404.1520(c). At the third step, if the impairment matches or is equivalent to established listings, then the claimant is judged conclusively disabled. 20 C.F.R. § 404.1520(d). If the claimant's impairments are not equivalent to the listings, the analysis proceeds to the fourth step. At this stage, the claimant must show that the impairment prevents him from performing work he has performed in the past. *See Williams,* 844 F.2d at 751 (citations omitted). If the claimant is able to perform his previous work, he is not disabled. *Id.*; 20 C.F.R. § 404.1520(e). This step requires a three phase analysis.

> In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity (RFC), and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work. In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. At each of these phases, the ALJ must make specific findings.

*Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996) (citations omitted). The fifth step requires the Commissioner to demonstrate that the claimant has the RFC to perform other work based on the claimant's age, education, past work experience, and there is availability of that type of work in the national economy. *See Williams*, 844 F.2d at 751; 20 C.F.R. § 404.1520(f).

### *4.     Disability Determination*

Plaintiff alleges that the Administrative Law Judge ("ALJ") committed two errors.[1] First, Plaintiff asserts that the ALJ improperly disregarded Dr. Lowes' opinion. (Pl.'s Br. at 6.) Second, Plaintiff asserts that the ALJ's RFC determination disregarded objective and subjective evidence of Plaintiff's functional limitations. (*Id.* at 7–9.) I address each argument in turn.

#### *a.     The ALJ Properly Considered the Opinions of Dr. Lowes*

Plaintiff argues that the ALJ did not fully develop the record because the ALJ did not give weight to Dr. Lowes' opinions, "which were based on objective evidence." (*Id.* at 6–7.) Specifically, Plaintiff contends that "[t]he fact that the treating provider finds that severe impairment exists has been disregarded and otherwise ignored by the ALJ." (*Id.*)

In January 2002, Dr. Lowes evaluated Plaintiff in a routine follow-up. (Admin. R. at 147.) Dr. Lowes noted that Plaintiff was doing "reasonably well," but he "continues to be dyspneic with a mild to moderate level of exertion." (*Id.*) Plaintiff had an exercise test during this visit that was halted due to shortness of breath. (*Id.* at 152.) Dr. Lowes opined that Plaintiff was stable from a cardiac standpoint, but "[h]e does have a severe impairment in his functional capacity and, unfortunately, I think it will be difficult for him to return to a competitive work environment so based on his exercise test." (*Id.* at 148.)

---

[1] Plaintiff sets forth three separate arguments in support of his position that the ALJ erred in his decision. (Br. in Supp. of Pl.'s Compl. at 6–11 [filed Jan. 18, 2004] [hereinafter "Pl.'s Br."].) Plaintiff's second and third arguments are essentially identical. (*Id.* at 7–11.) Accordingly, I address them together under one heading.

The ALJ discussed Dr. Lowes' findings and opinion in his decision. Specifically, the ALJ determined that "Dr. Lowes did not assess any specific limitations regarding [Plaintiff's] ability to lift, sit, stand, or walk." (*Id.* at 60.) The ALJ noted that Dr. Lowes' "assessment is vague and d[id] not provide . . . useful information to help in the determination of disability." (*Id.*) Further, the ALJ determined that Dr. Lowes' opinion was contrary to Plaintiff's other treating cardiologists. (*Id.*) "None of [Plaintiff's] treating cardiologists has assessed any work or activity restrictions as a result of his impairments." (*Id.*)

While a treating physician may proffer an opinion that a plaintiff is totally disabled, that opinion is not dispositive because final responsibility for determining the ultimate issue of disability is reserved to the Commissioner. *Castellano v. Sec'y of Health and Human Serv.*, 26 F.3d 1027, 1029 (10th Cir. 1994). The Commissioner will give controlling weight to a treating physician's opinion if it is "well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record." *Id.* Further, a treating physician's opinion may be rejected if his conclusions are not supported by specific findings. *Id.*

The ALJ determined that Dr. Lowes' opinions were not supported by objective evidence. (Admin. R. at 60.) In fact, the ALJ's determination that Plaintiff had the RFC to perform sedentary work was consistent with Dr. Lowes' opinion that Plaintiff had severe functional limitations. (*Id.* at 60, 147–48, 152.) Dr. Lowes' opinion that Plaintiff would have difficulty working was inconsistent with the other treating physicians who evaluated Plaintiff at the Heart Failure Clinic. (*Id.* at 60.) The majority of Plaintiff's other treating cardiologists determined that Plaintiff had at most, class II symptoms. (*Id.* at 156, 173, 184.) The ALJ noted that class II

symptoms correspond to a slight limitation of physical activity. (*Id.* at 60.) Further, Dr. Lowes opined on two separate occasions that Plaintiff was doing "reasonably well" from a clinical standpoint. (*Id.* at 147, 164.) Accordingly, the ALJ's decision not to give controlling weight to Dr. Lowes' opinions was not in error.

Plaintiff argues "[t]he ALJ did not provide specific and legitimate reasons, but rather a conclusory determination that the assessment was vague." (Pl.'s Br. at 7.) Plaintiff's position is incorrect. The ALJ explained in detail the reasons why he concluded that Dr. Lowes' opinion was vague, including the fact that it was inconsistent with the other treating cardiologists and Dr. Lowes' own assessment. (*Id.* at 60.) Moreover, the ALJ was correct in his notation that "[a] medical source opinion that an individual is disabled or is unable to work is an opinion on the ultimate issue of disability, which is an issue that is reserved to the Commissioner." (*Id.*) Thus, Plaintiff's argument as to this point is unavailing.

### b. *The ALJ's RFC Determination Considered All Subjective and Objective Evidence of Plaintiff's Limtations*

Next, Plaintiff argues that the ALJ's RFC determination improperly disregarded subjective and objective evidence of Plaintiff's physical limitations. (Pl.'s Br. at 7–11.)[2] Specifically, Plaintiff contends that the ALJ's credibility determination was incorrect and "the ALJ is precluded from using the Plaintiff's testimony to determine RFC because he found that the Plaintiff's testimony regarding his symptoms and limitations was not credible." (*Id.* at 8–9.)

---

[2]From the outset I note that Plaintiff's argument is confusing. It is difficult to discern exactly which portions of the ALJ's decision Plaintiff contends are in error. Thus, I address Plaintiff's argument as thoroughly as possible in light of its incoherent nature.

Further, Plaintiff contends that the "ALJ failed to take into account the fact that, regardless of being able to perform the tasks required in the various jobs, the Plaintiff would not be capable of maintaining employment." (*Id.* at 10.) Although it is difficult to discern exactly what Plaintiff is arguing, it seems that Plaintiff essentially contends that the ALJ erred in assessing his credibility and his RFC. I will address each below.

### *(1)     The ALJ Properly Evaluated Plaintiff's Credibility*

The ALJ properly assessed Plaintiff's credibility in his decision. Credibility determinations "'are peculiarly the province of the finder of fact,' and should not be upset if supported by substantial evidence." *White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2001) (quoting *Kepler v. Chater*, 68 F.3d 387, 390–91 [10th Cir. 1995]). This court may not re-weigh the evidence and substitute its judgment for the ALJ. *Id.* at 909. As set forth below, substantial evidence supports the ALJ's determinations that Plaintiff's allegations of disabling pain and other symptoms were not credible. Furthermore, the objective medical evidence does not support Plaintiff's claim that he is totally disabled.

First, the record indicates that Plaintiff was able to work with his condition. (Admin. R. at 156, 173.) Plaintiff's employer terminated him from work due to economic reasons on April 27, 2001. (*Id.* at 61.) Thus, Plaintiff did not leave work because of his physical impairments. (*Id.*) It is significant that Plaintiff left work for reasons other than his disability. *See Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1349 (10th Cir. 1990) (the fact that the plaintiff left her employment for non-health related reasons is relevant to the disability inquiry); *Dixon v. Sullivan*, 905 F.2d 237, 239 (8th Cir. 1990) (same).

Next, as the ALJ noted that, medication alleviated or improved Plaintiff's cardiac and respiratory symptoms. (Admin. R. at 56–57, 148, 153–54, 156, 173, 176, 183.) Impairments that are reasonably alleviated by treatment cut against a determination of total disability. *See Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995). Further, Plaintiff sought treatment on an infrequent basis for his ailments. (Admin. R. at 58, 61.) The nature of the treatment sought is a relevant factor in assessing the intensity of Plaintiff's symptoms. *See Luna v. Bowen*, 843 F.2d 161, 165–66 (10th Cir. 1987).

Finally, Plaintiff's daily activities, as reflected throughout the record, are inconsistent with Plaintiff's claim that he is totally disabled. (Admin. R. at 61–62.) Plaintiff testified that he did household chores, washed dishes, cooked, drove, shopped for groceries, did limited yard work, and shoveled snow. (*Id.* at 236, 239–41, 250–51.) There is a discrepancy between Plaintiff's recitation of his daily routine and his complaints of total disability. *See Musgrave v. Sullivan*, 966 F.2d 1371, 1376 (10th Cir. 1992) (subjective allegations of pain, without more, are insufficient to establish disabling pain). Based on the foregoing, the ALJ did not err in finding that Plaintiff was not credible.

### (2) *Substantial Evidence Supports the ALJ's RFC Determination*

Plaintiff contends that the ALJ erred in his RFC determination because "the ALJ failed to take into account the fact that, regardless of being able to perform the tasks required in the various jobs, the Plaintiff would not be capable of maintaining employment." (*Id.* at 10.) Plaintiff argues that "while he is able to perform a number of tasks included within the sphere of sedentary work, he must take a great deal of time to do them. . . Given these limitations, as well

as the testimony of the vocational expert, it is extremely unlikely that the Plaintiff will be able to obtain or maintain any type of employment." (*Id.* at 11.) Plaintiff's argument is misplaced.

Plaintiff argues that, given "the testimony of the vocational expert" it is not likely he will be able to obtain employment. (*Id.* at 10–11.) This is a rather peculiar argument in light of the fact that the vocational expert, Hardaway, testified that Plaintiff was capable of performing unskilled sedentary work as a food and beverage order clerk, a charge account clerk, and a paramutual ticket checker. (*Id.* at 254–55.) Hardaway opined that such jobs existed in the regional or national economy. (*Id.*) Haradway further testified that an individual such as Plaintiff could perform light work as a factory assembler and traffic checker. (*Id.* at 254–55.) He testified that Plaintiff could perform these jobs if he was limited to lifting and carrying only ten pounds occasionally. (*Id.* at 258.) Thus, Plaintiff's reliance on Hardaway's testimony for support that he is totally disabled and unable to work is misplaced and improper. Moreover, the substantial medical evidence discussed above supports the ALJ's determination that Plaintiff could perform sedentary work. Accordingly, the ALJ did not err in his determination of Plaintiff's RFC.

### 4. *Conclusions*

Based on the foregoing it is therefore

ORDERED that the Commissioner's decision is AFFIRMED.

Dated this 12th day of August, 2005

BY THE COURT:

s/Edward W. Nottingham
EDWARD W. NOTTINGHAM
United States District Judge